Jones, J.
Does Section 614-53, G-eneral Code, authorize the public utilities commission to order the issue of stocks and bonds to discharge indebtedness and reimburse a utility company’s treasury when such indebtedness was incurred more than five years prior to the application! The commission, by denying the application, answered this question in the negative. The solution of the question depends upon the construction of the section, which reads as follows:
“Sec. 614-53. A public utility or a railroad, as defined in this act, may, when authorized by order *93 of the commission, and not otherwise, issue stocks, bonds, notes and other ■ evidences of indebtedness, payable at periods of more than twelve months after date thereof, when necessary for the acquisition of property, the construction, completion, extension or improvement of its facilities or for the improvement or maintenance of its service, or for the reorganization or readjustment of its indebtedness and capitalization, or for the discharge or lawful refunding of its obligations, or for the reimbursement of moneys actually expended from income or from any other moneys in the treasury of the public utility or railroad not secured or obtained from the issue of stocks, bonds, notes or other evidences of indebtedness of such public utility or .railroad, within five years next prior to the filing of an application therefor as herein provided, or for any of the aforesaid purposes except maintenance of service and except replacements in cases where the applicant shall have kept its accounts and vouchers of such expenditures in such manner as to enable the commission to ascertain the amount of money so expended and the purposes for which said expenditure was made.
“The commission may, by order duly made, authorize the issue of bonds, notes, or other evidences of indebtedness, for the reimbursement of money heretofore actually expended from income for any of the aforesaid purposes, except maintenance of service and replacements prior to five years next preceding the filing of an application therefor, if such application for such consent be made prior to January 1, 1913. Any bonds, notes, or other evidences of indebtedness, payable at periods of more than twelve months after date thereof, may be issued *94 as herein provided, regardless of the amount of the capital stock of the public utility or railroad, subject to the approval of the commission to the excess of such bonds, notes, or other evidences of indebtedness above the amount of the capital stock of such public utility or railroad, notwithstanding any provisions of the General Code of Ohio now in force to the contrary.
“Provided, however, that it shall be the duty of the commission to authorize on the best terms obtainable, such issues of stocks, bonds and other evidences of indebtedness as shall be necessary to enable any public utility to comply with the provisions of any contract heretofore made between such public utility and any municipality. ’ ’
The quoted section provides that by order of the commission a utility may issue stocks and bonds for the (a) acquisition of property, (b) the construction, completion or extension of improvements, (c) the reorganization or capitalization, or (d) for the discharge or refunding of its obligations. If the section for such authorization stopped at that point, there would be no doubt under the facts conceded, that the commission would have ample authority to grant the order asked. The commission, however, holds that its authority is limited by what follows, to-wit, that the utility may not issue stocks and bonds unless it be for (e) the reimbursement of moneys actually expended, etc., “within five years next prior to the filing of an application therefor.”
The language and punctuation of the section are involved. But it is impossible to give the limited construction employed by the commission without nullifying the plain import of the former clauses, authorizing such issue for the purpose of readjustment *95 of the company’s indebtedness or for the discharge or refunding of the company’s obligations. If the natural punctuation is followed, the five-year period must apply only to the clause wherein it is contained and be limited to the reimbursement of moneys'expended from income or from other moneys in the treasury. These obligations cannot be said to have been moneys in the treasury in the sense used in the statute, because these were obligations due the company’s creditors, incurred from time to time since the organization. Furthermore some tangible import must be given to the prior clause authorizing the issue “for the discharge or lawful refunding of its obligations.” Neither in the application nor in the record does it appear that the proposed issue was for the reimbursement of ‘ ‘moneys actually expended from income.” The application contains no such statement. Paragraph (5) of Section 614-54, General Code, supports the view here taken, for it requires a statement showing when moneys obtained from income were expended, evidently having regard to the five-year period covering expenditures from income. We have nothing to do with legislative policy, but it is very evident that our construction would do no violence to legislative policy, for the attorney general in his brief concedes that this utility might accomplish its purpose by reincorporating, selling its property to the new company and then capitalizing the assets of the latter, and thus obtaining authority to issue stocks and bonds “for the acquisition of the property” thus secured by its reincorporation. The commission had authority to order the issue of stocks and bonds for the purposes named, but if the reimbursement is shown to *96 be for moneys actually expended from income, etc., the applicant should comply with that clause of the act.
The order of the commission will be reversed and the cause remanded to the commission for further order in accordance with this opinion.

Order reversed.

Marshall, C. J., Johnson, Hough, Wanamaker, Robinson and Matthias, JJ., concur.